## WILLIAMS *v.* KAISER, WARDEN.

No. 102.  Argued December 12, 1944.—Decided January 8, 1945.

*Mr. John Raeburn Green,* with whom *Mr. Keith L. Seegmiller* was on the brief, for petitioner.

*Mr. Robert J. Flanagan,* Assistant Attorney General of Missouri, with whom *Mr. Roy McKittrick,* Attorney General, was on the brief, for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner pleaded guilty to an indictment charging him with robbery by means of a deadly weapon. The Circuit Court of Iron County, Missouri, found him guilty and sentenced him to the state penitentiary, where he is now confined, for a term of fifteen years on May 28, 1940. In April, 1944, he filed a petition for a writ of *habeas corpus* in the Supreme Court of Missouri. After reciting the foregoing facts concerning his conviction he further alleges in his petition:

"Prior to his conviction and sentence, as aforesaid, the petitioner requested the aid of counsel. At the time of his conviction and sentence, as aforesaid, the petitioner was without the aid of counsel, the Court did not make an appointment of counsel, nor did petitioner waive his constitutional right to the aid of counsel, and he was incapable adequately of making his own defense, in consequence of which he was compelled to plead guilty."

And he contends that he was deprived of counsel contrary to the requirements of the due process clause of the Four-

teenth Amendment. The Supreme Court of Missouri allowed petitioner to proceed *in forma pauperis* but denied the petition for the reason that it "fails to state a cause of action." The case is here on a petition for a writ of certiorari which we granted because of the substantial nature of the constitutional question which is raised.

Missouri has a statute which requires a court on request to assign counsel to a person unable to employ one and who is charged with a felony. Rev. Stat. 1939, § 4003. The Missouri Supreme Court did not indicate the reasons for its denial of the petition beyond the statement that the petition failed to state a cause of action. Whatever the grounds of that decision it is binding on us insofar as state law is concerned. *Smith* v. *O'Grady,* 312 U. S. 329. But the right to counsel in cases of this type is a right protected by the Fourteenth Amendment of the federal Constitution. The question whether that federal right has been infringed is not foreclosed here, even though the action of the state court was on the ground that its statute requiring the appointment of counsel was not violated. *Powell* v. *Alabama,* 287 U. S. 45, 59–60. And Missouri has not suggested in the argument before this Court that it provides a remedy other than *habeas corpus* for release from a confinement under a judgment of conviction obtained as a result of an unconstitutional procedure. Neither in the briefs nor in oral argument did Missouri suggest that its *habeas corpus* procedure (see Rev. Stat. 1939, §§ 1590, 1621, 1623) is not available in this situation.[1]

The petition for *habeas corpus* was denied without requiring the State to answer or without giving petitioner an opportunity to prove his allegations. And the allega-

---

[1] It is available to challenge the constitutionality of the statute on which the judgment of conviction rests. *Ex parte Smith,* 135 Mo. 223, 36 S. W. 628; *Ex parte Taft* v. *Shaw,* 284 Mo. 531, 538–539, 225 S. W. 457; *Ex parte McKean,* 338 Mo. 597, 600, 92 S. W. 2d 141.

tions contained in the petition are not inconsistent with the recitals of the certified copy of the sentence and judgment which accompanied the petition and under which petitioner is confined. Hence we must assume that the allegations of the petition are true. *Smith* v. *O'Grady, supra.* Read in that light we think the petition makes a *prima facie* showing of denial of the constitutional right. The Missouri Supreme Court has ruled that when a defendant requests counsel it will be "presumed," in absence of evidence to the contrary (*State* v. *Steelman,* 318 Mo. 628, 631, 300 S. W. 743), that he was "without counsel and that he lacked funds to employ them." *State* v. *Williams,* 320 Mo. 296, 306, 6 S. W. 2d 915. We indulge the same presumption. Certainly it may be reasonably inferred from that request and from the further allegation that as a result of the court's failure to appoint counsel petitioner was "compelled to plead guilty," that he was unable to employ counsel to present his defense because he was without funds. Like other judgments, a judgment based on a plea of guilty is not of course to be lightly impeached in collateral proceedings. See *Johnson* v. *Zerbst,* 304 U. S. 458, 468–469. But a plea of guilty to a capital offense made by one who asked for counsel but could not obtain one and who was "incapable adequately of making his own defense" stands on a different footing. Robbery in the first degree (Rev. Stat. 1939, § 4450) by means of a deadly weapon is a capital offense in Missouri. Rev. Stat. 1939, § 4453. The law of Missouri has important distinctions between robbery in the first degree, robbery in the second degree, grand larceny, and petit larceny.[2] These involve technical requirements of the indictment or information, the kind of evidence required

---

[2] Thus one indicted for robbery in the first degree cannot be convicted of robbery in the second degree but may be convicted of larceny. *State* v. *Jenkins,* 36 Mo. 372; *State* v. *Davidson,* 38 Mo. 374; *State* v. *Brannon,* 55 Mo. 63.

for conviction,[3] the instructions necessary to define the several elements of the crime,[4] and the various defenses which are available. These are a closed book to the average layman. These considerations underscore what was said in *Powell* v. *Alabama, supra,* p. 69: "Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect." Those observations are as pertinent in connection with the accused's plea as they are in the conduct of a trial. The decision to plead guilty is a decision to allow a judgment of conviction to be entered without a hearing—a decision which is irrevocable and which forecloses any possibility of establishing innocence. If we assume that petitioner committed a crime, we cannot know the degree of prejudice which the denial of counsel caused. See *Glasser* v. *United States,* 315 U. S. 60, 75–76. Only counsel could discern from the facts whether a plea of not guilty to the offense charged or a

---

[3] See *State* v. *White,* 326 Mo. 1000, 34 S. W. 2d 79.

[4] See *State* v. *Brown,* 104 Mo. 365, 16 S. W. 406; *State* v. *Woodward,* 131 Mo. 369, 33 S. W. 14; *State* v. *McLain,* 159 Mo. 340, 60 S. W. 736.

plea of guilty to a lesser offense would be appropriate.[5] A layman is usually no match for the skilled prosecutor whom he confronts in the court room. He needs the aid of counsel lest he be the victim of overzealous prosecutors, of the law's complexity, or of his own ignorance or bewilderment.

These are reasons why the right to counsel is "fundamental." *Powell* v. *Alabama, supra,* p. 70; *Grosjean* v. *American Press Co.,* 297 U. S. 233, 243–244; *Avery* v. *Alabama,* 308 U. S. 444, 447. They indicate the protection which the individual needs when charged with crime. Prompt and expeditious detection and punishment of crime are necessary for the protection of society. But that may not be done at the expense of the civil rights of the citizen. Law enforcement need not be inefficient when accommodated to the constitutional guarantees of the individual.

*Powell* v. *Alabama, supra,* p. 71, held that at least in capital offenses "where the defendant is unable to employ counsel, and is incapable adequately of making his own defense because of ignorance, feeble mindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law." It follows from our construction of this petition that if the allegations are taken as true, petitioner was denied due process of law. It may well be that these allegations will turn out to be specious and unfounded. But they are sufficient under the rule

---

[5] "Robbery in the first degree without the use of a dangerous and deadly weapon is included in the charge of robbery by means of such weapon. Larceny is also so included, and where the charge is robbery and there is evidence of a larcenous taking of property but the element of force such as to constitute the offense of robbery is wanting there should be an instruction submitting larceny." *State* v. *Craft,* 338 Mo. 831, 843, 92 S. W. 2d 626. And see *State* v. *Weinhardt,* 253 Mo. 629, 161 S. W. 1151.

of *Powell* v. *Alabama* to establish a deprivation of due process of law if their verity is determined. See *Cochran* v. *Kansas,* 316 U. S. 255. Cf. *Walker* v. *Johnston,* 312 U. S. 275.

As we have said, Missouri does not claim that *habeas corpus* is not available in this type of case or that under Missouri law there is some procedure other than *habeas corpus* available to petitioner in which he may challenge the judgment of conviction on constitutional grounds. Missouri, however, does contend that the denial of counsel could have been challenged by petitioner by an appeal, that no appeal was taken, and that no extraordinary circumstances are shown which excuse that failure. Heretofore we have not considered a failure to appeal an adequate defense to *habeas corpus* in this type of case. *Smith* v. *O'Grady, supra.* Under these circumstances the failure to appeal only emphasizes the need of counsel. If an appeal were made such a requirement, the denial of counsel would in and of itself defeat the very right which the Constitution sought to protect.

It is suggested, moreover, that for all we know the denial of the petition by the Supreme Court of Missouri rested on adequate state grounds. It is a well established principle of this Court that before we will review a decision of a state court it must affirmatively appear from the record that the federal question was presented to the highest court of the State having jurisdiction and that its decision of the federal question was necessary to its determination of the cause. *Honeyman* v. *Hanan,* 300 U. S. 14, 18; *Lynch* v. *New York,* 293 U. S. 52. And where the decision of the state court might have been either on a state ground or on a federal ground and the state ground is sufficient to sustain the judgment, the Court will not undertake to review it. *Klinger* v. *Missouri,* 13 Wall. 257, 263; *Wood Mowing & Reaping Machine Co.* v. *Skinner,* 139 U. S. 293, 297; *Allen* v. *Arguimbau,* 198 U. S. 149,

154–155; *Lynch* v. *New York, supra.* We adhere to those decisions. But it is likewise well settled that if the independent ground was not a substantial or sufficient one, "it will be presumed that the State court based its judgment on the law raising the Federal question, and this court will then take jurisdiction." *Klinger* v. *Missouri, supra,* p. 263; *Johnson* v. *Risk,* 137 U. S. 300, 307; *Lawrence* v. *State Tax Commission,* 286 U. S. 276, 282–283. Thus in *Maguire* v. *Tyler,* 8 Wall. 650, and in *Neilson* v. *Lagow,* 12 How. 98, 110, it was contended that the judgments rested on adequate state grounds. In neither was there an opinion of the state court. The Court examined the record, found the state grounds not substantial or sufficient, and reversed the judgments on the federal question.[6] We think the principle of those cases is applicable here. The petition establishes on its face the deprivation of a federal right. The denial of the petition on the grounds that it fails to state a cause of action strongly suggests that it was denied because there was no cause of action based on the federal right. And when we search for an independent state ground to support the denial, we find none. The Attorney General of Missouri only goes so far as to say that the petition did not state facts sufficient to justify the appointment of counsel under the Missouri statute. But as we have seen, the allegations in the petition seem sufficient under the rule laid down by the Supreme Court of Missouri in *State* v. *Williams, supra.* And Missouri suggests no other state ground which

___

[6] In the following cases the Court without benefit of an opinion of the state court examined the pleadings, found substantial state grounds on which the judgment might have rested, and dismissed the writ. *Johnson* v. *Risk, supra; Allen* v. *Arguimbau, supra; Bachtel* v. *Wilson,* 204 U. S. 36; *Adams* v. *Russell,* 229 U. S. 353; *Cuyahoga River Power Co.* v. *Northern Realty Co.,* 244 U. S. 300, 303; *Lynch* v. *New York, supra; Woolsey* v. *Best,* 299 U. S. 1; *McGoldrick* v. *Gulf Oil Corp.,* 309 U. S. 2.

might be the basis of the decision.[7]  That is to say, the only state grounds which have been advanced in support of the decision below appear to be insubstantial.  We can only assume therefore that the denial by the Supreme Court of Missouri was for the reason that the petition stated no cause of action based on the federal right.  That seems to us to be the fair intendment of the language which it used if we put to one side, as we must, the insubstantial state grounds which have been advanced in explanation of the denial.  If perchance the Supreme Court of Missouri meant that some reason of state law precludes a decision of the federal question, that question is not foreclosed by this decision.  Cf. *State Tax Commission* v. *Van Cott,* 306 U. S. 511; *Minnesota* v. *National Tea Co.,* 309 U. S. 551.  But on the present state of the record before us, we do not see what more petitioner need do to establish the federal right on which his petition is based.

*Reversed.*

MR. JUSTICE FRANKFURTER, dissenting.

At the request of one charged with a felony and unable to employ counsel, Missouri requires its courts to assign counsel.  In *State* v. *Williams,* 320 Mo. 296, 6 S. W. 2d 915, a defendant on trial for a capital offense requested the court to assign counsel, and the court accordingly appointed two lawyers for his defense.  After a plea of guilty and the imposition of a death sentence, an appeal was taken from a denial of a motion in arrest of judgment

---

[7] It is stated that the petition does not allege facts which show that petitioner was denied a fair trial, that he was ignorant, that he was innocent, or that the court was prejudiced.  But it is not apparent how the addition of any such allegations to the petition would be relevant to petitioner's cause of action based on the constitutional right to counsel.  We are not referred to any Missouri law which would make them relevant.

on the ground that the trial court violated the Missouri statute in that the record did not show that the judge had ascertained the inability of the accused to employ counsel before appointing them. The Missouri Supreme Court held that the absence of such a specific finding did not constitute a violation of the Missouri statutes. "The record shows that it was upon defendant's request that the court assigned him counsel. Having requested the court to assign counsel, it will then be presumed that defendant was without counsel and that he lacked funds to employ them." 320 Mo. at 306. The court thus rejected the frivolous claim that by giving the accused what he asked for, counsel not of his choice had been forced on him. That decision can hardly serve as a springboard for concluding in this case that the Supreme Court of Missouri violated the Constitution of the United States in finding that the record did not show that the trial court, in denying the present defendant's request for the assignment of counsel, denied him rights under the law of Missouri as well as the United States Constitution. To be sure, the Missouri Supreme Court did not write an opinion in support of its conclusion that the petitioner's writ for *habeas corpus* "fails to state a cause of action." There is nothing significant about that, and it does not affect the basis or scope of this Court's review of state court decisions. During its 1942 judicial year the Supreme Court of Missouri disposed of 300 cases by opinion and 217 cases without opinion; during its 1942 judicial year this Court disposed of 218 cases by opinion and 146 cases without opinion (apart from dispositions of petitions for *certiorari*). If the determination by the Missouri court can reasonably be justified on failure to comply with a requirement of Missouri law, then it must be so justified. And the record here plainly allows the inference that the petitioner did not meet the procedural requirements of Missouri law for relief by *habeas corpus*. If a decision

of a state court can rest on a state ground, it is our duty to conclude that it does so rest; it is our duty not to assume that the state court rejected a claim under the United States Constitution.

From the beginning, such has been the principle governing our review of state court decisions. In cases coming here from the state courts, this Court has no power to pass on questions of state law; it can review a state court decision only insofar as that raises a question of federal law; and it can only then pass on the federal question if a decision on federal law was necessary for the judgment rendered by the state court. This historic distribution of judicial authority as between the state courts and this Court was confirmed and reinforced during the Reconstruction period when the influences toward expansion of federal jurisdiction were at floodtide. *Murdock* v. *Memphis,* 20 Wall. 590.[1]

---

[1] "The rules which govern the action of this court in cases of this sort are well settled. Where it appears by the record that the judgment of the State court might have been based either upon a law which would raise a question of repugnancy to the Constitution, laws, or treaties of the United States, or upon some other independent ground; and it appears that the court did, in fact, base its judgment on such independent ground, and not on the law raising the Federal question, this court will not take jurisdiction of the case, even though it might think the position of the State court an unsound one. But where it does not appear on which of the two grounds the judgment was based, then, if the independent ground on which it might have been based was a good and valid one, sufficient of itself to sustain the judgment, this court will not assume jurisdiction of the case; but if such independent ground was not a good and valid one, it will be presumed that the State court based its judgment on the law raising the Federal question, and this court will then take jurisdiction." *Klinger* v. *Missouri,* 13 Wall. 257, 263.

These settled principles were very recently again summarized in a *per curiam* opinion in *Southwestern Bell Tel. Co.* v. *Oklahoma,* 303 U. S. 206, 212–213:

"We have repeatedly held that it is essential to the jurisdiction of this Court in reviewing a decision of a court of a State that it must

These sound like dry rules of technical jurisdiction. In fact they express an important phase of due regard for our federal constitutional system. State courts are no less under duty to observe the United States Constitution than is this Court. To be sure, authority is vested in this Court to see to it that that duty is observed. But to assume disobedience instead of obedience to the Law of the Land by the highest courts of the States is to engender friction between the federal and state judicial systems, to weaken the authority of the state courts and the administration of state laws by encouraging unmeritorious resorts to this Court, and wastefully to swell the dockets of this Court.

This case gives point to the importance of adhering to the principles that govern our review of state decisions. Nothing is a more fundamental characteristic of a civilized society than those securities which safeguard a fair trial for one accused of crime. Those assurances were written into the Federal Constitution even against State action by the Due Process Clause of the Fourteenth Amendment. A central safeguard is the opportunity for an accused to have adequate facilities for presenting his defense. But a full half century before the United States Constitution made this requirement of the States, Missouri, while yet a Territory, provided for the assistance

---

appear affirmatively from the record, not only that a federal question was presented for decision to the highest court of the State having jurisdiction but that its decision of the federal question was necessary to the determination of the cause; that the federal question was actually decided or that the judgment as rendered could not have been given without deciding it. *De Saussure* v. *Gaillard*, 127 U. S. 216, 234; *Johnson* v. *Risk*, 137 U. S. 300, 306, 307; *Wood Mowing & Reaping Machine Co.* v. *Skinner*, 139 U. S. 293, 295, 297; *Whitney* v. *California*, 274 U. S. 357, 360, 361; *Lynch* v. *New York*, 293 U. S. 52, 54."

of counsel for accused in need. Digest of the Laws of Missouri Territory, 1818, Crimes and Misdemeanors § 35. There is nothing to warrant the assumption that the Supreme Court of Missouri was unmindful of the exactions of its own historic law or of the extent to which that is now embedded in the Due Process Clause. On the contrary, every assumption must be indulged that that court was mindful of the right which may be claimed by an indigent accused to have a lawyer's aid for his defense. But it may also have been mindful of the requirement of her law that a trial judge be reasonably convinced that an accused is in need of counsel.

Of course this Court will not withhold its reviewing power over a decision of a state court by presuming that the state court founded its decision on a wholly untenable basis of local law. See, *e. g., Neilson* v. *Lagow,* 12 How. 98, 109–111. But nothing in the record before us precludes the assumption that the Missouri Supreme Court found a local inadequacy in the petition for a writ of *habeas corpus.* If the Missouri Supreme Court had in fact refused to grant the writ of *habeas corpus* because it concluded that there was not a sufficient allegation by petitioner that he had need for counsel, certainly this Court would not reject that as an inadequate state ground. And if that would have furnished an adequate state ground, we must assume that it did, instead of attributing to the Supreme Court of Missouri a flagrant violation of the Constitution. If the Missouri Supreme Court enforces its requirement that an accused make manifest his need for appointed counsel and if Missouri enforces this requirement even with procedural strictness against those convicted of felonies years after their sentence, it is not for us to be hypercritical in denying to the highest tribunal of a State what it may conceive to be its duty to see to it

that the great writ of *habeas corpus* is not abused[2] and that the administration of criminal justice is not needlessly weakened by astute devices. While the petition in this case was signed by Williams alone, it bears every evidence of having been drawn by one aware of the relevant legal issues and skilled in legal drafting.

If, perchance, we were to interpret erroneously the decision of the Supreme Court of Missouri in finding that the present writ failed to state a cause of action because it was wanting in requirements of Missouri law, no real harm will have been done. By proper application to the state court, the ambiguity of the present record may be removed by showing, if indeed such be the fact, that the Missouri Supreme Court necessarily rejected a federal claim here reviewable. See *Whitney* v. *California,* 269 U. S. 530; 274 U. S. 357, 360–362; *Lynch* v. *New York,* 293 U. S. 52; *Honeyman* v. *Hanan,* 300 U. S. 14. Or, another petition for a writ of *habeas corpus* making the necessary allegations would quickly reveal whether the Supreme Court of Missouri flagrantly disregarded a law of Missouri older than the State itself, let alone a right sanctioned by the Constitution of the United States. Petitioner is now represented by able and devoted counsel who would quickly enough bring to light any such disregard. Certainly we ought not to attribute illegality to the Supreme Court of Missouri when the assumption of

---

[2] "We are dealing with a writ antecedent to statute, and throwing its root deep into the genius of our common law. . . . It is perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement. It is of immemorial antiquity, an instance of its use occurring in the thirty-third year of Edward I. It has through. the ages been jealously maintained by Courts of Law as a check upon the illegal usurpation of power by the Executive at the cost of the liege." *Secretary of State For Home Affairs* v. *O'Brien* [1923] A. C. 603, 609.

obedience to its own traditions lies so readily on the sur-
face of this record.

The petition should be dismissed for want of
jurisdiction.

MR. JUSTICE ROBERTS joins in this opinion.

